UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Hybred International and Iddo Batcha,

                    Plaintiffs,              CV-08-4343
                                            (CPS)(KAM)

    - against -

                                            MEMORANDUM
                                            AND ORDER

Thorne Legal, Inc., Louis Sorrentino,
Lakeview Consulting, Inc., Lugion
Associates, Inc., Anthony Guglieri,
Peter Nicosia, Bull In Advantage, Inc.,
All State Funding Services, Inc., Janie
Collins, Investsource, Inc.

                    Defendants.

----------------------------------------X

SIFTON, Senior Judge.

    Hybred International, Inc. ("HYII") and Iddo Batcha

("Batcha") (collectively, "plaintiffs") commenced this action

against Anthony Guglieri ("Guglieri"), Allstate Funding, Inc.

("Allstate"), Peter Nicosia, Bull In Advantage, Inc., Janie

Collins, InvestSource, Inc. ("InvestSource"), Thorne Legal, Inc.

("Thorne"), Louis Sorrentino, Lakeview Consulting, Inc., Lugion

Associates, Inc., and Christine Carew[1] (collectively,

"defendants"), alleging: breach of contract (Count II); unjust

enrichment (Count IV); conversion (Count V); negligence per se in

---

[1] All defendants in this action except for Allstate Funding and Christine
Carew have been served. Only Guglieri, Allstate, Thorne Legal, Investsource,
and Ms. Carew have made appearances. Ms. Carew, although not named as a
defendant, nevertheless is referred to in the complaint, and has appeared.
Under the circumstances, she is not treated as a defendant in this opinion.

violation of the Securities and Exchange Act of 1933 § 17(a), 15 U.S.C. § 77q ("Securities Act")(Count VI);[2] negligence per se in violation of the Securities and Exchange Act of 1934 § 10B-5, 15 U.S.C. § 78j ("Exchange Act") (Count VII); fraud (Count VIII); consumer fraud (Count IX); and fraudulent transfers (Count X). Plaintiffs seek a temporary restraining order, replevin, attorneys fees, actual damages, consequential damages, punitive damages, 1,650,000 shares of HYII common stock, and a preliminary injunction. Now before the Court is plaintiff's motion for a preliminary injunction to restrain defendants from transferring shares of HYII stock. Defendants Guglieri, Allstate, Thorne Legal, and InvestSource have filed papers opposing the motion. Based on the findings of fact and conclusions of law set forth below, the motion is denied.

## BACKGROUND

The following facts are taken from the parties' submissions in connection with this motion. Disputes are noted.

*The Parties*

Plaintiff HYII states that it is in the business of manufacturing horseshoes. Compl. at ¶ 41. Defendants state that HYII has and had nothing of value, that it has an office space but no factory or employees, and that it is a shell. Guglieri

---

[2]This claim was withdrawn at oral argument and will not be discussed further.

Affidavit at ¶ 11 ("Guglieri Aff."). HYII is incorporated within the State of Colorado and is authorized to do business within the State of New Jersey, where it has its headquarters. Compl. at ¶ 21. HYII's current CEO is Gary Kouletas. *Id.* Plaintiff Batcha is an individual and a domiciliary of the State of Florida, and was the CEO prior to Mr. Kouletas. *Id.* at ¶ 22.

Defendant Guglieri is the secretary of Allstate Funding, Inc, and has his principal address in Staten Island, New York. Compl. at ¶ 23. Defendant Allstate Funding, Inc. has its principal place of business in Staten Island, New York. *Id.* Defendant Peter Nicosia has his principal address in Rochester, New York. *Id.* Defendant Bull In Advantage, LLC has its principal place of business in Rochester, New York. *Id.* Defendant Janie Collins has her principal address in San Antonio, Texas. *Id.* Defendant InvestSource, Inc. has its principal place of business in Huntington Beach, California. *Id.* Defendant Thorne Legal, Inc. has its principal place of business in Huntington Beach, California. *Id.* Defendant Louis Sorrentino has his principal address in Highlands, New Jersey. *Id.* Defendant New Media Advisors, Inc. has its principal place of business in Rochester, New York. *Id.* Defendant Lakeview Consulting, LLC, has its principal place of business in Encinitas, California. *Id.* Defendant Lugion Associates, Ltd. has its principal place of business in Pittsford, New York. *Id.*

*Factual Background*

Plaintiffs claim that in July of 2008, HYII engaged defendants Guglieri and Allstate to perform investment relations and public relations services (collectively, the "Services"). Complaint at ¶ 24 ("Compl."). The Services were arranged for by an agent of HYII, Brett Hamburger ("Hamburger"), who finalized the contract orally. *Id*. at ¶ 25. Defendants claim that Guglieri entered into the contract solely with Hamburger, and not with HYII or Batcha. Guglieri Aff. at ¶ 3. Defendants further claim that Guglieri did not make any promises to Hamburger, except that he intended to perform the contract. *Id*. at ¶ 5. Guglieri explained to Hamburger that he could not do all of the work, and that he knew other people and organizations that specialize in public relations. *Id.* Guglieri and Hamburger entered into a contract whereby defendants would receive 1,650,000 shares of stock in exchange for doing various pieces of work. *Id.* The defendants did receive 1,650,000 shares of common stock (the "Shares"). Compl. at ¶ 26. Plaintiffs do not acknowledge that they knew that the various defendants would be doing various pieces of the work, and instead claim that Guglieri and Allstate requested that the consideration be paid to the other defendants. *Id*. at ¶ 28.  The allocations were as follows:

| Defendant | Shares | Certificate No. |
|---|---|---|
| Antony Guglieri | 500,000 | 536 |

| | | |
|---|---|---|
| Peter Nicosia | 75,000 | 537 |
| Bull In Advantage, LLC | 75,000 | 538 |
| Allstate Funding Services, Inc. | 200,000 | 539 |
| Janie C. Collins | 100,000 | 540 |
| InvestSources, Inc. | 75,000 | 541 |
| Thorne Legal, Inc. | 75,000 | 542 |
| Christine Carew | 90,000 | 543 |
| Louis Sorrentino | 10,000 | 544 |
| New Media Advisors, Inc. | 150,000 | 545 |
| Lakeview Consulting, LLC | 250,000 | 534 |
| Lugion Associates, Ltd. | 50,000 | 535 |

Compl. at ¶ 28. Plaintiffs claim that to date, the Services have not been rendered. *Id*. at ¶ 29.

Defendants claim that they did the work as requested. Guglieri claims that he paid $45,000 from his own funds to do the marketing campaign, and that he bought additional shares of HYII stock in the hopes that the company would do well. Guglieri Aff. at ¶ 6. He hired a company called BNM Investments ("BNM") to do an email and profile campaign, and paid that company $50,000 for the work (the $5000 in additional funds came from his colleague). *Id*., Ex. A. BNM in turn hired other experts on public relations, such as OTC Advisors, which Guglieri evidences with a copy of their disclaimer indicating that they received $20,000 to do public relations work for HYII. *Id*. at ¶ 7.

Guglieri also approached InvestSource and Thorne and requested that they assist in providing financial and marketing services to Hybred. Sahachiaisere Aff. at ¶ 2. On July 14, 2008, Greg Kouletas sigend a Press Account Contract with InvestSource, permitting pre-releases to be provided to InvestSource. *Id.* at ¶

5. Pursuant to this agreement, Investsource and Thorne provided financial consulting services to Hybred, including dissemination of Hybred company information, issuance of press releases, publishing interviews with Hybred's CEO, and other related services. *Id*. at ¶ 6. InvestSource created a company profile, which was posted on the InvestSource website, and prepared a newsletter including interviews with Hybred's CEO. *Id*. at ¶ 7.

Defendants point out that evidence of their marketing work is viewable in the internet, where a recent Google search returns numerous hits for the search "Hybred International," some of which were posted by defendant InvestSource. Defendants claim that most of these search returns exist as a result of the work they performed. Guglieri Aff. at ¶ 8.

HYII's stocks are penny stocks. Guglieri Aff. at ¶ 1. People who wish to invest in penny stocks tend to check various websites that specialize in those types of stocks. *Id*. at ¶ 9. Defendants state that they prepared various stories and reports on HYII in order to bring attention to the corporation. *Id*. For example, they circulated a report regarding HYII's announcement that the company was preparing a new kind of horseshoe, and that it was retaining a well known jocky on its board of directors. *Id*., Ex. E. In the beginning, the marketing endeavor was very successful, as evidenced by the fact that the volume of trading "skyrocketed" in the month of July, 2008. *Id.* at ¶ 10. Plaintiffs characterize

this shift in trading volume differently, as discussed below.

Plaintiffs claim that as part of the Agreement, defendants agreed not to sell the Shares prior to full execution of the Services, and that despite this, defendants have sold the majority of their Shares into the market. Compl. at ¶ ¶30, 31. As evidence, they point to the July fluctuations in stock trading volume and price. *Id.*, Ex. A, B. Plaintiffs further claim that this concentrated sale has decreased the price of HYII shares by 90%, and that this makes raising capital for HYII very difficult, and has long term implications for HYII's borrowing capacity and credit rating. *Id*. Defendants claim that the volume of trading increased due to the marketing efforts, and that the share price dropped due to the precipitous drop in the markets overall and the fact that the company has no business to offer. *Id.* at ¶ 14. According to defendants, HYII only has an office space, has no factory or employees, and has no current business. *Id.* at ¶ 11. Furthermore, defendants claim, HYII never had any news to report through the various marketing channels that had been established. *Id*. at ¶ 12. Regarding the claim that they have impermissibly sold shares, defendants offer evidence that Allstate continues to retain its original 200,000 shares. Guglieri Aff. Ex. G. Guglieri claims to know that other defendants have not sold many or all of their shares, and that defendant Janie Collins mailed back her certificates to plaintiffs' attorney when there was threat of a

lawsuit. Guglieri Aff. at ¶ 17.

InvestSource and Thorne state that after they had performed the agreed upon services, they sold the shares provided to them, realizing a profit of $4000. Sahachiaisere Aff. at ¶ 9. Nearly five months after InvestSource and Thorne's services were complete, the companies received a letter stating that they should stop sales of Hybred Common Stock. *Id*. at ¶ 10. However, the shares had already been sold. InvestSource and Thorne claim that the agreement by which they received 150,000 shares of common stock contained no restrictions on the resale of these shares.[3] Defendants' Memorandum in Opposition to Motion for Preliminary Injunction at 2.

Plaintiffs claim that defendants have failed to return the Shares after repeated demands by plaintiffs, and that defendants will likely continue to sell the Shares unless restrained. *Id*. at ¶ ¶ 33, 34. During all times contemplated by this action, HYII's transfer agent was, and still is, Xpidite Transfer, Inc., located in Denver, Colorado. *Id*. at ¶ 35.

*Procedural Background*

On October 24, 2008, Judge Wexler granted plaintiff a Temporary Restraining Order ("TRO"), restraining defendants from transferring HYII stock.

---

[3] Defendants InvestSource and Thorne also submit that their agreement with Hybred contained a provision whereby all disputes would be litigated in the State or Federal Courts of California. Because I deny the motion for preliminary injunction, I do not consider the venue question here.

**DISCUSSION**

## I. Jurisdiction

This Court has exclusive jurisdiction pursuant to the Exchange Act § 27, 15 U.S.C. 78aa. This Court has supplemental jurisdiction over the state law and common law claims, pursuant to 28 U.S.C. § 1367. However, because plaintiffs' federal claims may be dismissed, it is necessary to address plaintiffs' other grounds for jurisdiction.

Federal district courts have subject matter jurisdiction over civil actions where the amount in controversy exceeds $ 75,000 and the action is between citizens of different states. 28 U.S.C. § 1332(a)(1). It is well established that diversity jurisdiction requires complete diversity between all plaintiffs and defendants in the action. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373-74, 98 S. Ct. 2396, 57 L. Ed. 2d 274 (1978). Under Section 1332, a corporation "is a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c). Plaintiff states that this Court has diversity jurisdiction over the parties. Because it has its headquarters there and has no other center of operations, HYII is a citizen of New Jersey. *See Pinnacle Consultants, Ltd. v. Leucadia Nat. Corp.*, 101 F.3d 900, 906 (2d Cir. 1996). Defendant Louis Sorrentino ("Sorrentino") is also domiciled in New Jersey.

In their reply brief, plaintiffs state that they "have no idea who Defendant Louis Sorrentio is, what he did in the way of services, or how he came to his shares." Plaintiffs' Reply at ¶ 4 ("P. Reply"). Plaintiffs then surmise that Sorrentino is an agent of Guglieri. Defendants argue that an agent is governed under the principal place of business of the principal, citing *Quaker State Dyeing & Finishing Co., v. ITT Terryphone Corp.*, 461 F.2d 1140 (3d Cir. 1972), which does not stand for the stated proposition. Plaintiffs cite no other authority for this proposition. Complete diversity is lacking between the parties. I will assume jurisdiction for purposes of the present motion based on the Exchange Act claim.

## II. Preliminary Injunction

Pursuant to Federal Rule of Civil Procedure 65(a), a preliminary injunction is appropriate if the movant shows (a) irreparable harm and (b) either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *Gold v. Feinberg*, 101 F.3d 796, 800 (2d Cir. 1996).

A district court must conduct a hearing on a motion for preliminary injunction where the essential facts are in dispute.

*Fengler v. Numismatic Americana, Inc.*, 832 F.2d 745, 747 (2d Cir.
1987). A hearing is not necessary, however, when a movant does
not make a sufficient showing of irreparable harm, when
credibility is at issue, when the right to a hearing has been
waived, and when additional evidence will not change the court's
finding. *Dodge v. County of Orange*, 208 F.R.D. 79, 86 (S.D.N.Y.
2002) (citing decisions). Furthermore, "there is no hard and fast
rule in this circuit that oral testimony must be taken on a
motion for a preliminary injunction or the court can in no
circumstances dispose of the motion on the papers before it."
*Consolidated Gold Fields PLC v. Minorco, S.A.*, 871 F.2d 252, 256
(2d Cir. 1987) (quoting *Redac Project 6426, Inc. v. Allstate Ins.
Co.*, 402 F.2d 789, 790 (2d Cir. 1968)). In this case, even
accepting plaintiffs' well-pleaded allegations in the complaint
as true, they are not entitled to relief as a matter of law.


A.  Irreparable Harm

Irreparable harm is an "injury for which a monetary award
cannot be adequate compensation." *Jayaraj v. Scappini,* 66 F.3d
36, 39 (2d Cir. 1995) (citing *Jackson Dairy, Inc. v. H.P. Hood &
Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)). "If an adequate
remedy at law exists, no preliminary injunction may issue."
*Nature's Enters. v. Pearson*, 2008 U.S. Dist. LEXIS 86142 at *5
(S.D.N.Y 2008) (citing *Register.com, Inc. v. Verio, Inc.*, 356
F.3d 393, 404 (2d Cir. 2004)). Irreparable harm "must be shown by

the moving party to be imminent, not remote or speculative."
*Reuters Ltd. v. United Press Intern, Inc.,* 903 F.2d 904, 907 (2d
Cir. 1990) (citing *Tucker Anthony Realty Corp. v. Schlesinger,*
888 F.2d 969, 972 (2d Cir. 1989)). The movant is required to
establish not a mere *possibility* of irreparable harm, but that it
is "*likely* to suffer irreparable harm if equitable relief is
denied." *JSG Trading Corp. v. Tray-Wrap, Inc.,* 917 F.2d 75, 79
(2d Cir.1990) (emphasis in original). "Likelihood sets, of
course, a higher standard than 'possibility.'" *Id.*

Plaintiffs allege that defendants rapidly sold the stock
given to them in exchange for services never rendered, and
thereby decreased the price of HYII's shares by 90%. Compl. at ¶
40, Ex. A, B. Plaintiffs claim that this drop in price makes
raising capital very difficult and has long term implications for
HYII's borrowing capacity and credit rating. *Id.* Plaintiff's
implicit argument for the existence of irreparable harm is as
follows: should defendants make additional quick sales of stock
as they have already allegedly done, the stock price would likely
further drop and further negatively affect HYII's credit rating
and ability to raise capital to support its business. While the
value of the stock itself can be compensated, the decreased
credit rating and inability to raise capital cannot.

Defendants claim that they did not sell large numbers of
Shares, and offer evidence that at least one defendant has not

sold any of its stock.[4] They argue that the drop in share price
was due to the overall weakness of the market, the inherently
risky nature of penny stocks, the fact that HYII was not actually
doing any business, and the fact that HYII proposed to
manufacture horseshoes, which is a low tech industry with limited
growth potential. Defendants' Memorandum in Opposition to
Preliminary Injunction at 2 ("D. Opp.").

Based on these submissions, it is not possible to tell
whether the drop in share price is due to the overall downturn in
the market or due to some defendants selling off stock. Because I
find that there is no likelihood of success on the merits, I will
refrain from belaboring this uncertainty.


B. Likelihood of Success on the Merits

*Breach of Contract*

To establish a claim for breach a contract, plaintiffs must
prove that (1) a contract existed between the parties; (2)
plaintiffs have in all respects complied with their obligations;
(3) defendants failed to perform their obligations under the
contract; and (4) plaintiffs have been damaged as a result of
defendants' actions. *Weiss v. La Suisse, Societe D'Assurances Dur
La Vie*, 226 F.R.D. 446, 450 (S.D.N.Y 2005) (citations omitted).

Plaintiffs allege that they formed an oral contract with

---

[4]Defendants point to a stock certificate showing that as of October 9,
2008, Allstate had 200,000 shares of HYII stock. Guglieri Aff. Ex. H.

Guglieri and Allstate to perform Services, and that the services were not performed.[5] However, defendants have submitted evidence that they did complete the marketing Services as requested.[6] Guglieri paid a sum to another company, which in turn hired a third party to perform some services. In addition, Guglieri submits several pages of Google search results for "Hybred International" that indicate many articles that were posted in July of 2008, some of which were published by defendant InvestSource. Guglieri Aff. Ex. D. It is thus apparent that defendants performed some marketing services, and that the breach of contract claim on this basis is unlikely to succeed.[7]

However, there is an additional relevant term of the oral contract between Hybred, Allstate and Guglieri, whereby "Defendants agreed not to sell the shares prior to full execution

---

[5]For the purposes of this motion, I assume that the contract was properly formed and that the terms of the contract as stated were actually part of the agreement.

[6]It is not clear exactly what tasks Hybred expected defendants to perform in fulfillment of the contract. However, it is apparent that Hybred expected the marketing efforts to increase the share price in some fashion. Regarding this expectation, defendants pointed out at oral argument that Hybred's shares are unregistered, and therefore any effort on the part of defendants to promote the sale of Hybred shares through their marketing efforts would have been illegal. Section 5(c) of the Securities Act, *inter alia*, makes it unlawful for a person, directly or indirectly, to communicate in interstate commerce an offer to sell through the use of any prospectus or otherwise any security, unless a registration statement has been filed. 15 U.S.C. § 77e. The term "offer to sell" includes "every attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security, for value." 15 U.S.C. § 77b(a)(3). A prospectus is defined as "any prospectus, notice, circular, advertisement, letter, or communication" that offers any security for sale. 15 U.S.C. § 77b(a)(10).

[7]In addition, plaintiffs appear to acknowledge that defendants did perform services. In their reply brief, plaintiffs refer to news releases and public relations activity. Plaintiffs' Reply at ¶¶ 14, 16.

of the Services." Compl. at ¶ 30. Plaintiffs allege that defendants have sold large numbers of Shares, and that plaintiffs have been harmed as a result. Plaintiffs offer a graph depicting the share price and volume of trading from May to June, which shows that there was a much greater volume of trading in July, concurrent with a steep drop in share price. Compl. Ex. A. Plaintiffs also offer a numerical depiction of the share price and volume of trading from October, 2007 through October, 2008, which shows a much greater volume of trading in July, 2008, the month that HYII transferred the shares to defendants pursuant to the contract. Compl. ¶ 24, Ex. B. It is clear that a large number of HYII shares were sold at a date corresponding to the transfer of HYII shares to defendants. However, it is unclear who sold these shares. Plaintiffs offer no evidence to that effect. Defendants, furthermore, offer a stock certificate issued to Allstate showing that as of October 9, 2008, it still possessed 200,000 shares, the amount it was paid under the contract. Plaintiffs have not made a showing that defendants Allstate and Guglieri have sold shares or that they will in the near future sell shares in violation of the contract. This claim is not likely to succeed on the merits.

*Unjust Enrichment*

To succeed on a claim of unjust enrichment, "plaintiff must show that (1) defendant was enriched (2) at plaintiff's expense,

and (3) that it is against equity and good conscience to permit... defendant to retain what is sought to be recovered." *Lake Minnewaska Mountain Houses Inc. v. Rekis*, 259 A.D.2d 797, 798, 686 N.Y.S.2d 186 (App. Div. 1999)(quotations omitted); *see also Golden Pacific Bancorp v. FDIC*, 273 F.3d 509, 519 (2d Cir. 2001) (enumerating the same test). The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates in the absence of any valid and enforceable contract, whether written or implied-in-fact. *See Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586-87 (2d Cir. 2006).

In this case, plaintiffs assert that they have a valid contract with defendants Guglieri and Allstate. Therefore, as against those defendants, relief can only be granted on the breach of contract claim, not a claim for unjust enrichment.

As against Peter Nicosia, Bull In Advantage, Inc., Janie Collins, InvestSource, Inc., Throne Legal, Inc., Louis Sorrentino, Lakeview Consulting, Inc., and Lugion Associates, Inc. ("the other named defendants"), plaintiffs assert that they have become enriched by receiving the shares of HYII stock without consideration. However, as stated above, defendants have offered evidence that Services were performed in exchange for the Shares. Success on the merits is not likely here. In addition, because plaintiffs have estimated appropriate money damages for this claim in their complaint, injunctive relief would be

inappropriate.


*Conversion*

Conversion is the tort of unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights. *State v. Seventh Regiment Fund, Inc.*, 98 N.Y.2d 249, 259 (N.Y. 2002). In general, "equity will not enjoin torts where the remedy at law is adequate, as it often is." *Galella v. Onassis*, 353 F.Supp. 196, 235-36 (S.D.N.Y. 1972), aff'd in part, rev'd in part on other grounds, 487 F.2d 986 (2d Cir. 1972). However, where factors such the imminent threat of continued harm and the difficulty of evaluating the injury in monetary terms weigh in favor of the conclusion that a remedy at law is inadequate, a tort may be enjoined. *Id.* at 235-37.

As stated above, defendants have offered evidence that Services were performed in exchange for the Shares. Furthermore, plaintiffs have stated that the money value of the Shares should be the highest interim value when held by defendants, which plaintiffs estimate to be $462,000. Compl. at ¶ 63. Plaintiffs do not allege that defendants will continue to convert additional Shares. Accordingly, there is an adequate remedy at law for plaintiffs' claim for conversion and injunctive relief is inappropriate on this claim.

*Exchange Act § 10B-5 claim*

"In order to state a cause of action under § 10(b) and Rule 10b-5, a plaintiff must allege facts that, if proved, would establish that the defendant (1) with scienter (2) made a material misrepresentation or omitted to disclose a material fact that it had a duty to disclose (3) upon which plaintiff reasonably relied (4) causing plaintiff to be damaged (5) in connection with the purchase or sale of a security." *Debora v. WPP Group PLC*, 1994 U.S. Dist. LEXIS 5830 at *7 (S.D.N.Y. 1994) (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 231, 99 L. Ed. 2d 194, 108 S. Ct. 978 (1988)). In addition, plaintiffs must "state with particularity all facts on which" they formed their belief that defendants made an untrue statement of material fact. 15 U.S.C. § 78u-4(b)(1); *Rothman v. Gregor*, 220 F.3d 81, 89 (2d Cir. 2000)). "To plead scienter in a securities fraud claim, a complaint may (1) allege facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness, or (2) allege facts to show that defendants had both motive and opportunity to commit fraud." *Rothman*, 220 F.3d at 90 (citing *Stevelman v. Alias Research, Inc.*, 174 F.3d 79, 84 (2d Cir. 1999); *Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)). In addition, "To meet the pleading standard of [Federal Rule of Civil Procedure] 9(b),... the pleading [must] explain why the statements were fraudulent." *In re Initial Public Offering Securities Litigation*, 383 F.Supp.2d 566, 575 (S.D.N.Y.

2005). Under Rule 9(b), "mere conclusory allegations to the
effect that defendant's conduct was fraudulent or in violation of
Rule 10b-5 are insufficient." *Shemtob v. Shearson, Hammill & Co.,
Inc.*, 448 F.2d 442, 444 (2d Cir. 1971). In cases involving
multiple defendants, Rule 9(b) requires that the pleading
identify the nature of each defendant's participation in the
alleged fraud. *DiVittorio v. Equidyne Extractive Industries*, 822
F.2d 1242, 1247 (2d Cir. 1987); *Luce v. Edelstein*, 802 F.2d 49,
54 (2d Cir. 1986).

Allegations of a breach of contract, without more, do not
create a claim under § 10(b) and Rule 10b-5. *Santa Fe Industries,
Inc. v. Green*, 430 U.S. 462, 476, 97 S. Ct. 1292; 51 L. Ed. 2d
480 (1977); *Shemtob*, 448 F.2d at 445. "It is well-settled that
the failure to carry out a promise made in connection with a
securities transaction is normally a breach of contract and does
not justify a Rule 10b-5 action." *Guarary v. Winehouse*, 235 F.3d
792, 801 (2d Cir. 2000) (internal quotations omitted). "Remedies
for such violations are generally sought under state laws."
*Bischoff v. G.K. Scott & Co., Inc.*, 687 F.Supp. 746, 749
(E.D.N.Y. 1986).

To the extent that plaintiffs' claim against defendant rests
on the claim that defendants failed to perform services or sold
shares in violation of the contract, there is no 10b-5 claim.
Plaintiffs must do more. A claim for breach of contract "cannot
be bootstrapped into an alleged violation of § 10(b) of the

Exchange Act, or Rule 10b-5, in the absence of allegation of facts amounting to scienter, intent to defraud, reckless disregard for the truth, or knowing use of a device, scheme or artifice to defraud. It is insufficient to allege mere negligence." *Shemtob*, 448 F.2d at 445.

Plaintiffs' allegations of misrepresentation are that defendants had no intention to perform on the contract, Compl. at ¶ 81, and that defendants employed a "scheme to defraud plaintiffs." *Id*. at 74.[8] However, plaintiff fails to support these conclusory allegations with facts, as required by the heightened pleading standards for Rule § 10(b) claims and Fed.R.Civ.Pro. Rule 9(b). There is no evidence that any of the defendants made any intentional misrepresentations. Accordingly, this claim is unlikely to succeed on the merits.

*Fraud, Consumer Fraud, and Fraudulent Transfers Claims*

As described in the preceding section, plaintiffs have failed to plead with particularity the facts giving rise to their belief that fraud has been committed, and therefore are not

---

[8]In their reply brief, plaintiffs state that it is "easy to construct a scenario" where defendants published the news releases, then sold the stock immediately after the release while the price was high, and then repurchased the shares in the open market. P. Reply at ¶ 14. Plaintiffs state that there is also a possibility that defendants "created an inventory"of HYII shares prior to the press releases and then sold the shares contemporaneously with the press releases. *Id*. at ¶ 15. Plaintiffs argue that these assertions raise "material questions of insider information and market timing." *Id*. at ¶ 16. Plaintiffs appear to allude to an insider trading claim, which is unrelated to their previous claim that defendants defrauded them by not performing services, and which was not pled in the complaint. These allegations have no bearing on the determination of this motion.

likely to succeed on the merits of any of their claims that
relate to fraud.

## CONCLUSION

For the reasons stated above, the motion for a preliminary
injunction is denied. The Clerk is directed to transmit a copy of
the within to all parties and to the assigned Magistrate Judge.
SO ORDERED.


Dated :   Brooklyn, New York
          November 24, 2008


          By:   /s/ Charles P. Sifton (electronically signed)
                          United States District Judge